**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **FLORA B. LEGER, INDIVIDUALLY,** | § | |
| **AND AS REPRESENTATIVE OF THE** | § | |
| **ESTATE OF STANLEY J. LEGER;** | § | |
| **JIM LEGER AND MARK LEGER** | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO.  1:16-cv-00235** |
| | § | |
| **JOSHUA AARON  BEARD;** | § | |
| **RYAN MICHAEL CEDARS ;** | § | |
| **R. C. CAMPBELL;** | § | |
| **JAMES SINGLETARY,** | § | |
| **CHIEF OF POLICE, BEAUMONT** | § | |
| **POLICE DEPARTMENT;** | § | |
| **BECKY AMES, MAYOR, CITY OF** | § | |
| **BEAUMONT, TEXAS;** | § | |
| **KYLE HAYES, CITY MANAGER,** | § | |
| **CITY OF BEAUMONT, TEXAS; AND** | § | |
| **THE CITY OF BEAUMONT, TEXAS;** | § | |
| | § | |
| **Defendants** | § | **JURY TRIAL DEMANDED** |

**PLAINTIFFS' FIRST AMENDED ORIGINAL COMPLAINT**

COME NOW FLORA B. LEGER, INDIVIDUALLY, AND ON BEHALF OF THE

ESTATE OF STANLEY J. LEGER, JIM LEGER and MARK LEGER, Plaintiffs, and file this

First Amended Original Complaint, complaining of JOSHUA AARON BEARD, RYAN

MICHAEL CEDARS, R. C. CAMPBELL, THE CITY OF BEAUMONT, TEXAS, BECKY

AMES, KYLE HAYES, and JAMES P. SINGLETARY , hereinafter Defendants, as follows:

# I.

## PARTIES

1.      Plaintiff FLORA B. LEGER is an adult individual residing in Hardin County, Texas.

2.      Plaintiff ESTATE OF STANLEY J. LEGER exists in Jefferson County, Texas and Plaintiff Flora B. Leger is the lawful representative of said Estate.

3.      Plaintiff JIM LEGER is an adult individual residing in Bowie County, Texas.

4.      Plaintiff MARK LEGER is an adult individual residing in Hardin County, Texas.

5.      JOSHUA AARON BEARD is an individual who has been served and has appeared in this matter.  He is being sued in his individual and official capacities.

6.      RYAN MICHAEL CEDARS is an individual who has been served and has appeared in this matter. He is being sued in his individual and official capacities.

7.      R. C. CAMPBELL is an individual who has been served and has appeared in this matter. He is being sued in his individual and official capacities.

8.      JAMES P. SINGLETARY is the Chief of Police of the Beaumont Police Department, and as such is a final policymaker, and who has been served and has appeared in this matter. He is being sued in his individual and official capacities.

9.      BECKY AMES is the Mayor of the City of Beaumont, Texas, and as such is a final policymaker, and who has been served and has appeared in this matter. She is being sued in her individual and official capacities.

10.     KYLE HAYES is the City Manager for the City of Beaumont, Texas, and as such is a final policymaker, and who has been served and has appeared in this matter. He is being sued in his individual and official capacities.

11.     THE CITY OF BEAUMONT, TEXAS is an incorporated city in the State of Texas and which has been served and has appeared in this matter.

## II.

## JURISDICTION AND VENUE

12.     This Court has personal jurisdiction over defendants because they reside in Texas or are subdivisions of the State of Texas. This Court has subject matter jurisdiction over these claims under 28 U.S.C. §§ 1331, 1343 and 1367.  Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. §1391 (b)(1) and (2).

## III.

## FACTS

13.     Plaintiffs Flora B. Leger and Stanley J. Leger had lived in Beaumont, Texas for sixty-three (63) years.  Flora B. Leger, 80 years of age and retired, was the wife of Stanley J. Leger, 80 years of age. Prior to the incident made basis of this litigation, the Legers had been married sixty-three (63) years.  The Legers resided at 4870 Galveston, Beaumont, Texas.  The Legers had lived at this residence for fifty-three (53) years.  The Legers were known and liked in their community and had friendly relationships with several city police officers.  Plaintiffs Mark Leger and Jim Leger are adult sons of Plaintiffs Flora and Stanley Leger.

14.     The Legers owned another house near their house which they leased to tenants. The house was located at 3140 East Lucas, Beaumont, Texas and was diagonally across the street (Lucas) from their house, approximately eighty to ninety yards away from their residence.

15.     On or about May 10, 2014, the Legers rented their lease house to two tenants, Shataria Brown and Thomas Williams.  Within a few days, the tenants began violating the terms of their lease agreement.  On or about June 10, 2014, due to the several breaches of the lease, several conversations with the tenants and concern for his rental property, Mr. Leger contacted several city officials, including police officials, in efforts to remove the tenants from his premises.  Mr. Leger was advised to serve an eviction notice.  On that date, Mr. Leger also placed a "for sale" sign in the front yard of the Lucas property as he and Flora Leger had decided to sell the house.

16.     On June 11, 2014, when Mr. Leger served the advised eviction notice on the tenants, the female tenant, Shataria Brown, contacted Beaumont Police Department and accused Mr. Leger of improper conduct toward her and sought charges to be filed against Mr. Leger.  Beaumont Police Department responded to the scene.  Later, the same date, the male tenant, Thomas Williams, verbally assaulted and threatened the Legers, which included, obscenity and threats of physical violence and death.  Again, Beaumont Police Department was notified.  Williams' threats and behavior after this time continued and occurred on more than one occasion.  The Legers repeatedly notified the Beaumont Police of these events.  After June 11, 2014, the tenants chose to no longer reside at the Lucas house and to Plaintiff's knowledge did not spend the night there afterward.

17.     On or after, June 11, 2014, the tenants began to destroy the Leger's rental property.  The Legers contacted the Beaumont Police.  However, as the tenants damaged the Leger's house in the presence of said police officers, the police officers refused to take any action to stop the damage. After doing the extreme damage to the interior of the house, the tenants left the premises.

18.     Mr. Leger, later, with appropriate notice, out of concern for the existence of the lease, entered the abandoned premises. Mr. Leger discovered that the property, now vacated, had been completely ransacked with large holes being knocked into the walls, fixtures broken, glass shower doors shattered and windows broken. The estimated damage by the tenants was approximately twenty thousand ($20,000) dollars.

19.     The eviction hearing had been scheduled for June 30, 2014, even though Brown and Williams had already vacated the premises. In the interim, Mr. Leger continued to contact city officials seeking assistance, including members of the Beaumont city council. Despite his efforts, no aid was provided to Mr. Leger.

20.     On June 24, 2014, at or near 7:15 p.m., Mr. Leger observed the tenant's vehicle pull into the driveway of the Lucas house, which they had not done since moving from the house on the 11th of June, 2014. Mr. Leger was able to observe the rental house via his front window in his own house. The day was overcast, lightly raining and dark due to stormy weather in the area. Mr. Leger exited his house carrying a .22 caliber rifle and, after observing activity near the door of his house, fired a single shot which did not strike any person or the house. After the shot, Brown walked from the porch to the car occupied by Williams. Their car exited the driveway onto East Lucas and then onto Galveston Street, towards and passing by Mr. Leger's house. Mr. Leger re-entered his home.

21.     As they left the scene, the Brown and Williams called 911 and within a few minutes met with Defendant Beard at a short distance from the Leger's property. Brown and Williams both claimed that Mr. Leger had shot at them. Defendant Beard, after briefly speaking with Brown and Williams about the incident, retrieved his AR-15 assault rifle and, leaving Brown and Williams at that locale, drove to a street near the Leger residence, in particular, East Lucas. Defendant Beard

parked his vehicle behind the vehicle of Defendant Cedars on East Lucas across the street from the Leger's rental house (3140 East Lucas).   Neither the vehicle of Defendant Cedars nor the vehicle of Defendant Beard were visible from the doorway of the Leger's home on Galveston Street.   Defendant Beard did not operate and had not operated his emergency sirens on his unit. Defendant Beard also did not use his vehicle to block traffic on East Lucas.   Defendant Beard arrived at 7:29 p.m., exited his vehicle and, with assault rifle in hand, assumed a covered, concealed position, hidden behind a palm tree, vehicles and the corner of the home located at located at 4895 Galveston, the house on the Southwest corner of East Lucas and Galveston and across the street from the Leger's home.   Defendant Beard's location was approximately sixty or seventy yards from the Leger's front door.    Defendant Beard was concealed from view from the front door of the Leger's home.

22.     Shortly before Defendant Beard's arrival, Defendant Cedars had arrived with his vehicle. Defendant Cedars had not operated the siren of his vehicle and also parked his vehicle on East Lucas in a location that was not visible from the Leger's home.   Defendant Cedars also had not blocked traffic with his vehicle.   Defendant Cedars also assumed a concealed and covered position at the edge of the house located at 4895 Galveston and behind vehicles in the driveway of that home.    Defendant Cedars had retrieved a shotgun from his vehicle.  Defendant Cedars was concealed from view from the front door of the Leger's home.

23.     Shortly after Beard's arrival, Defendant Campbell also arrived with his vehicle, also not operating his siren.   Defendant Campbell assumed a position of concealment on East Lucas, but on the same side of Galveston as Mr. Leger's house.   However, Campbell's location was behind the house next to the Leger residence at 4890 Galveston.   After exiting his vehicle, Defendant Campbell's position, on the East Lucas side of a privacy fence at the rear of the house, concealed

both him and his vehicle from view of the Plaintiff's house.  Defendant Campbell also did not block traffic with his vehicle.  Defendant Campbell did not retrieve a rifle or shotgun from his vehicle.

24.     At the time of the arrival of all three Defendants, Plaintiff Stanley Leger was not outside his house.

25.     Defendant Beard, Cedars and Campbell had made no effort to use their vehicles to block traffic on East Lucas or to divert traffic in any manner.  Therefore, Brown and Williams were allowed to drive their vehicle back to the 3140 East Lucas house.  Brown and Williams, not having been instructed to remain away from the location by Defendant Beard, drove their vehicle from East Lucas and into the grass beside the Leger's rental house.  They proceeded to drive the vehicle to a location behind the house, which was not a driveway.  Ultimately, they and almost all of their vehicle was blocked from view from the Leger's home by the house located at 3140 East Lucas.

26.     Mr. Leger observed the return of Brown and Williams's vehicle and the movement of the vehicle into a grassy area beside the house, hiding the vehicle from view.  Mr. Leger picked up his .22 rifle by the upper end of the rifle in one hand and exited the front of this house to his porch to observe the circumstances.

27.     At the time, approximately 7:32 p.m., Defendants Beard and Cedars were in concealed positions on the side of a house across the street and behind cars and a palm tree, approximately sixty to seventy yards away from Mr. Leger's porch.  Defendant Campbell was behind the house located at 4890 Galveston.  None of the patrol vehicles were visible from Plaintiff Stanley Leger's porch, where he stood.

28.     As Plaintiff Stanley Leger exited his home, he stayed at his front doorway.  Mr. Leger did not make aggressive movements toward any person.  Mr. Leger did not raise or point his rifle at any person.  He held the rifle by the barrel.  As Mr. Leger stood in his glass and metal storm door, in the threshold of his home, Defendants Cedars and Beard shouted from behind the vehicles and house toward Mr. Leger.  However, Defendant Beard, Cedars and Campbell did not identify themselves as police officers.  Further, Defendants' shouting from their concealed positions provided Mr. Leger with no notice that Defendants were officers and was not made loudly enough to be heard by Mr. Leger.  Further, Mr. Leger was clearly an elderly man.  Defendant Campbell was approximately the same distance from Defendants Beard and Cedars as was Mr. Leger and, unlike Mr. Leger, Defendant Campbell did not have any obstructions between himself and Defendants Beard and Cedars.  From Defendant Campbell's location, Defendants Cedars and Beard shouting was largely inaudible and all words being shouted were unintelligible.  Defendants' uniforms, vehicles or any other indicia of their being law enforcement, were not visible from the Leger porch or to Mr. Leger.  Mr. Leger stood on his own porch for approximately eight to nine seconds after opening his door during which time Mr. Leger took no actions that threatened any other person.  Mr. Leger lawfully stood in the doorway of his home holding a rifle by the barrel and made no threats or threatening actions toward any other person.  He did not speak.  At that time, despite Defendants' failure to notify Mr. Leger that they were police officers, failure to present commands loudly enough to be heard, and the very short elapsed period of eight to nine seconds, Defendant Beard fired a single shot from his AR-15 assault rifle.  Mr. Leger was struck in the left side of his chest and his spine.  Mr. Leger fell where he stood, mortally wounded, in the doorway of his home.  Defendant Cedars, standing within a few feet of Defendant Beard, did not

fire his weapon nor did he attempt to stop Defendant Beard from firing.  Defendant Campbell also did not fire his weapon.

29.    After shooting Mr. Leger, Defendants Beard, Cedars and Campbell converged upon his location.  Plaintiff Flora Leger, was just inside the house, when her husband of sixty-three (63) years was shot and fell in their doorway.  Alarmed, having heard the shot and believing that Brown or Williams had shot her husband, Plaintiff Flora Leger heard her husband attempt to speak.  She picked up her phone and called emergency services through 911. Then, she moved to aid her husband.

30.    Defendants Beard, Cedars and Campbell approached with weapons drawn, ordering Mr. Leger not to move as he was trying to stand.  Mrs. Leger, as she neared her husband, initially saw only one of the Defendant and believed that he was Williams.   Defendants Beard, Cedars and Campbell began to shout multiple commands, several conflicting, at Mr. Leger and, later, at Mrs. Leger.  Defendant Beard, with his assault rifle still in hand, Defendant Cedars with a shotgun in hand and Defendant Campbell with pistol in hand ordered Mrs. Leger, an unarmed eighty (80) year old woman back into the house and away from her husband, Stanley Leger.   As the Defendants' weapons were pointed at her, Mrs. Leger, unarmed and fearful, withdrew from her husband and into her home.

31.    As they approached, Defendants Beard, Campbell and Cedars, were aware that Mr. Leger could not stand and was immobilized.  They then took control of the rifle that Mr. Leger had dropped.   Defendants then dragged Mr. Leger by his belt and articles of his clothing from the threshold of his door to the driveway beside his house.  A few seconds later, Defendants again dragged Mr. Leger by his belt and pants further into the driveway beside the house, Mr. Leger groaned repeatedly as he was moved.   During this time, Defendants made very limited attempts

to assist Mr. Leger, mainly Defendants tried to talk to him and allegedly attempting to locate his wound.  Defendants stripped Mr. Leger of his clothes, except his underwear, during this time. At approximately 7:38, p.m., a fire truck arrived with Emergency Medical Service (EMS) personnel arrived at the scene.    Defendant Beard directed that Mr. Leger needed to be moved from the driveway to the street.   At approximately, 7:39 p.m., an ambulance arrived.  Shortly thereafter, an unidentified EMS person, indicated that they would leave the scene if they were not allowed to take Mr. Leger at that time.   Rather than permitting EMS personnel to bring a stretcher to Mr. Leger and remove him, Defendant Beard directed that the immobile and critically injured Mr. Leger be again carried.  At this time, Defendant Beard and EMS personnel picked up Mr. Leger, suffering from internal and spinal injury, by his arms and legs and carried him down his driveway to the stretcher and ambulance at the street.  During this entire time, Defendants were aware that Mr. Leger was alive.  Undoubtedly, Defendants were aware that moving Mr. Leger in a rough manner would cause additional injury, especially with a person who was injured to the point of being unable to move.  Defendants, during this entire time, were also aware that only Plaintiff Flora Leger was inside the Leger home and that she was still inside the house pursuant to earlier commands of the Defendants.  Plaintiff Flora Leger was not permitted to accompany her husband to the hospital.  Plaintiff Flora Leger's last view of her husband alive was as he was carried by arms and legs down their driveway stripped to his underwear.

32.    After Mr. Leger was carried down his driveway, Defendants entered her home after ordering Plaintiff Flora Leger from her home at gunpoint, insisting that she "show her hands", which only contained her Rosary beads.  Plaintiff Flora Leger, despite her requests, was not permitted to see or come near her husband and offer him any comfort. Plaintiff Flora Leger was not permitted to use her cellular phone or her house phone.  Further, she was not permitted to

return to her house of contact her family members.  Later, she was required to go to the Beaumont

Police Department in police custody.  She was not allowed to see her husband or to go to the

hospital.  Instead, Plaintiff Flora Leger was interrogated for a long period of time.

33.     Mr. Leger ultimately passed away at the hospital.

34.     Despite repeated requests by Mrs. Leger and the Leger family, none of the Beaumont

Police Department officers on the scene would tell her whether he was dead or alive.  Not only

were Mr. Leger's family members not permitted to comfort him on his way to the hospital, their

forced separation at the hands of the Beaumont Police meant that they were not permitted to

comfort each other.

## IV.

## CIVIL RIGHTS VIOLATIONS OF 42 U.S.C. § 1983

### EXCESSIVE FORCE

35.     Plaintiffs adopt and reassert paragraphs 1 through 34 as if fully set out herein.

36.     The defendants, acting under color of law and in concert with one another, unlawfully

arrested, assaulted, used excessive force against, unlawfully seized, and detained the plaintiffs

without probable cause, or reasonable suspicion that any violation or crime had been committed.

Those actions violate the plaintiffs' rights to due process and give rise to plaintiffs' claims pursuant

to the Fourth Amendment and, as applicable, to the States by the Fourteenth Amendment to the

Constitution of the United States and 42. U.S.C. § 1983.

37.     Plaintiffs further allege that Defendants, jointly and severally, deprived Mr. Leger of and

those rights, privileges, and immunities secured by the Fourth Amendment of the United States

Constitution and as incorporated and applied to the states through the Fourteenth Amendment.

Defendants' violations of Decedent's rights, included but are not limited to, the following ways:

(A) By using excessive and deadly force in the course of Defendants' attempt to seize and the seizure of the Decedent, in violation of the Fourth Amendment and its reasonableness standard. Plaintiffs plead that Decedent was unlawfully shot and killed by Defendant Beard. This action resulted directly and only from a use of force that was clearly excessive to the need, and was objectively and subjectively unreasonable;

(B) By unnecessarily dragging and carrying Plaintiff Stanley Leger, by his clothing, belt, arms and legs, on three separate occasions, despite the fact that he was clearly unable to stand and had been immobile since the gunshot wound to his chest and spine;

(C) By failing to provide timely medical attention and preventing same from being timely rendered, where it was clearly necessary and required by law; and

(D) By failing to provide supervision and/or proper training to prevent such incidents of excessive force.

38.    Defendants' violations of Mr. Leger's constitutional rights resulted in his suffering and death and were a direct and proximate cause of Plaintiffs' injuries.

39.    At all material times, Defendant Beard, Cedars and Campbell were acting under color of state law as agents and employees of Defendant, the City of Beaumont.  Defendants were wearing official Beaumont Police Department uniforms and were acting in the course and scope of their duties as a Beaumont Police Officers at the time Mr. Leger was shot and killed.

40.    Force is excessive, and therefore violates the Fourth Amendment, if it is not reasonable in light of the circumstances facing the officer.  The facts and circumstances of this case show that Defendant Beard's act of shooting and killing Decedent was clearly unreasonable.

41.     At the time of the shooting, Officer Beard had no reason to believe that Mr. Leger was dangerous to him or any other person.  Mr. Leger was eighty (80) years old and obviously an elderly man.  Mr. Leger made no violent or aggressive movements towards Defendant Beard or any other person that could be interpreted as threatening.  Mr. Leger made no verbal threats to Defendant Officers or any other person.   Defendant Officers did not ensure that Mr. Leger actually knew or understood that they were police officers.  Defendant Officers did not warn Mr. Leger or gave woefully insufficient warning that they would shoot if Mr. Leger did not comply with their commands.  Mr. Leger was at a substantial distance from any officer or other person.  Despite Mr. Leger's lack of any aggressive or threatening actions towards any other persons, Defendants only permitted the very short period of between eight and nine seconds to pass from Mr. Leger's coming through is door until firing the fatal shot.  Defendant officers' operated from places of concealment, behind a house, palm tree and vehicles, approximately sixty to seventy yards away.  Concealed and displaying no identification or indicia of being law enforcement, Defendants were undiscernible from Mr. Leger's porch.  Further, Williams, who had threatened serious bodily injury and death on Mr. Leger had been allowed to return to a location near that of Defendants.  Finally, the shouts of Defendants were not clear or necessarily audible to Mr. Leger.

42.     Defendant Beard did not have a reasonable fear of imminent bodily harm when he shot and killed Mr. Leger.  Defendant Beard did not have a reasonable belief that any other person was in danger of imminent bodily harm from Mr. Leger.  Consequently, shooting and killing Mr. Leger was unwarranted under these circumstances, and was objectively unreasonable when comparing or balancing the amount of force used against the need for the force.

43.     Therefore, by using subjectively and objectively unreasonable deadly force while acting under color of state law, Defendant Beard violated Decedent's rights under the Fourth and Fourteenth Amendments to the United States Constitution and caused his wrongful death.

44.     Defendants Beard, Cedars and Campbell moved or assisted in moving the critically injured and immobilized Mr. Leger three times after he had received internal injuries from the gunshot wound.  All Defendants were aware that he was immobile after the shot and that, with internal injuries, moving him would cause additional injury and pain.  Further, all Defendants were aware that Mrs. Leger was the only other person in the house, that they had demanded her to return into the house and that she had presented no threat to any of them.  As such, Defendants had no reason to move Mr. Leger prior to emergency services arriving and no reason to delay or divert such services.

45.     Defendants, jointly and severally, deprived Plaintiff Flora Leger of her rights, privileges, and immunities secured by the Fourth Amendment Constitution as incorporated and applied to the states through the Fourteenth Amendment. Defendants violated Mrs. Leger's rights in the following ways:

> (A) By using excessive force in the course of Defendants' attempt to seize and the ultimate seizure of Mrs. Leger, in violation of the Fourth Amendment and its reasonableness standard. This action resulted directly and only from a use of force that was clearly excessive to the need, and was objectively and subjectively unreasonable; Defendants' actions included holding her at gunpoint, forcing her further into her house, refusing to allow her to exit her house, requiring her to exit her house at gunpoint, refusing to allow her to care for her husband, refusing to allow her freedom to travel to the hospital and refusing to permit her to contact her

family. Finally, Mrs. Leger was injured by Defendants' excessive force against Mr.

Stanley Leger, as set forth above, as he was her husband.

46.     Violations of Mrs. Leger's constitutional rights included her being restrained from moving

freely.  Further, Mrs. Leger was unlawfully denied use of her own personal property, including her

telephone and cellular telephone.

47.     The facts and circumstances of this case show that Defendants' actions regarding Mrs.

Leger, an unarmed, elderly woman, were clearly unreasonable. At the time of the incident,

Defendant Officers had no reason to believe that Mrs. Leger was dangerous.  Defendants did not

have any indication that Mrs. Leger was in any manner armed or that she had committed a crime.

Further, Defendants had no reason to believe that Mrs. Leger was a danger to any person present.

Consequently, aiming loaded weapons at Mrs. Leger, threatening to shoot her and detaining her

without any evidence of criminal or dangerous activity on her part was objectively unreasonable

when comparing or balancing the amount of force used against the need for the force.  Mrs. Leger

was a threat to no one.

48.     Therefore, by using subjectively and objectively unreasonable force while acting under

color of state law, Defendants violated Mrs. Leger's rights under the Fourth and Fourteenth

Amendments to the United States Constitution.

49.     Plaintiffs bring each of their claims against all Defendants, jointly and severally, and

Defendants Beard, Cedars and Campbell, individually, as well as in their official capacity, pursuant

to 42 U.S.C. § 1983.

50.     The Defendants violated Plaintiffs' constitutional rights.  Those rights to be free from

excessive force, and not to be detained without probable cause or reasonable suspicion, among

others, were clearly established at the time of the shooting.  Nothing Plaintiffs did posed an

immediate threat to the safety of the Defendants or others. The Plaintiffs were not actively resisting arrest or attempting to evade arrest by flight.  At the time of Defendants' arrival, the Plaintiffs were inside their own home.

51.     Defendants Beard's, Cedars' and Campbell's conduct which was objectively unreasonable, resulted from their lack of training, and comported with the City of Beaumont's improper and/or illegal policies and practices.

52.     Defendants Beard, Cedars and Campbell actions from concealment, with no identification of themselves to Plaintiffs as a police officers, was an unnecessary use of force that escalated the incident from the beginning.  The Defendants made no or insufficient attempts to peaceably resolve the situation prior to taking the extreme action of shooting Mr. Leger, including failing to identify themselves as police officers and failing to provide a warning prior to shooting.

53.     As a direct and proximate result of Defendants' actions, Plaintiffs suffered injuries and, in Mr. Leger's case, death, which resulted directly and proximately from the use of force which was clearly excessive to the need (especially since there was no need at all), and the force used was objectively unreasonable. The use of force violated clearly established law.

54.     As a result of the improper actions described herein, and having sustained a bullet wound to the chest and spine, Mr. Leger suffered injury and, ultimately, death which was directly and proximately caused by Defendants.

55.     Having been assaulted, falsely detained, observed the mistreatment and ultimate death of her husband, denied her freedom and the right to know whether her husband was dead or alive, Mrs. Leger has suffered injury directly and proximately caused by Defendants.

56.     The City of Beaumont failed to adequately train and failed to reprimand any of the officers at the scene.

## MUNICIPAL LIABILITY

57.     Plaintiffs adopt and reassert paragraphs 1 through 56 above as if fully set out herein.

58.     Plaintiff Stanley Leger's constitutional rights were violated when he was shot and killed by Defendant Beard.  His injuries and death were directly and proximately caused by Defendant Beard's excessive use of deadly force in shooting and killing Mr. Leger.  Further, Flora Leger's constitutional rights were violated as set forth herein.

59.     The City of Beaumont (hereinafter, "City") is also liable under 42 U.S.C. § 1983 for failing to supervise and train its police officers, and for overlooking and covering up officer misconduct. The City's failure to supervise and train its police officers, and the City's willful disregard of the constitutional violations of its employees, violate persons', such as, Plaintiffs, rights.  The City's failures and lack of action proximately and directly caused Plaintiffs' injuries complained of herein, including, but not limited to, those under the Texas Wrongful Death Statute as applied through 42 U.S.C. Sections 1983 and 1988.

60.     Further, the City, through its customs and practices has instituted and maintained a policy of police brutality and excessive force which was used against Plaintiffs. The City failed to train or discipline its law enforcement officers with respect to the use of deadly force or determining whether a suspect poses a threat of serious physical harm to a law enforcement officer. The City has further failed to train or has inadequately trained its law enforcement officers to render medical care to shooting victims in their custody. Further, the City has failed to provide and enforce proper procedures for application of assault weapons by its officers, proper identification methods and proper procedures in use and application of deadly force.  The policies, customs, and practices of

the City regarding the training of its law enforcement officers proximately and directly caused the violation of Plaintiffs' rights to life and bodily integrity which were well established as of the date of the occurrence made the basis of this lawsuit.

61.     Additionally, municipalities may be held liable under 42 U.S.C. § 1983 for constitutional torts that are committed pursuant to a policy, procedure, practice, or custom of the municipality. Even if the City's practice of overlooking constitutional torts was not authorized by an officially adopted policy, the practice may be so common and well-settled that it fairly represents official policy.

62.     In the present case, the City's formal and informal actions in overlooking, hiding and/or tacitly encouraging police misconduct through other officers, the Beaumont police chiefs, including, Defendant James P. Singletary and others, as well as Mayors, including Mayor Becky Ames and the City Managers, including Kyle Hayes reflect a policy, practice custom and procedure authorizing and allowing the use of excessive force that violated the civil rights of Plaintiffs Flora and Stanley Leger.  Consequently, the City is liable for harm caused to others, such as Plaintiffs, as a result of its policies, practices customs and procedures.  The actions of the City and Chief Singletary in failing to institute proper training of the officers employed by the City of Beaumont, Texas Police Department violated Plaintiff's Fourth Amendment rights against excessive force. Chief Singletary further violated Plaintiffs' rights to life and bodily integrity by failing to adequately train or by inadequately training his officers to render medical care to shooting victims in their custody. These constitutional rights were clearly established as of the date of the occurrence made the basis of this lawsuit and any reasonable police chief would have known of these rights. Additionally, Chief Singletary failed to train or discipline his law enforcement officers with respect

to the use of deadly force or determining whether a suspect is armed and/or poses a threat of serious physical harm to a law enforcement officer.

63.     Defendant City is liable for the constitutional torts of Defendants Beard, Cedars and Campbell because the City sanctioned customs, practices, and policies, including, but not limited to:

(A) Using excessive, and oftentimes deadly force, to carry out otherwise routine arrests or stops;

(B) Using deadly force when such force is not necessary or permitted by law;

(C) Ignoring the serious need for training and supervision of its officers in regards to the use of force;

(D) Failing to discipline those persons whom are found to have engaged in the use of excessive force upon those entrusted to their care and/or under their control;

(E) Failing to adequately supervise and/or observe its officers;

(F) Failing to adequately train officers regarding the availability of alternative means of detaining persons other than the use of force or deadly force.

(G) Failing to discharge officers who have shown a pattern or practice of using excessive force;

(H) Failing to adopt and enforce appropriate procedures for use of rifles, in particular, assault rifles,

(I)   Failing to adopt and enforce appropriate procedures for identification of officers, and

(J) Adopting a practice whereby officers who are unfit for peace officer duties, as shown by prior actions in the line of duty, are allowed to retain their positions.

64.     At the time Defendant Beard shot and killed Mr. Leger, Officer Beard was acting pursuant

to an official city policy, practice, custom and procedure overlooking and/or authorizing police

officer's excessive use of force, which directly and proximately caused violation of constitutional

rights of Plaintiffs to be free from unlawful seizures and objectively unreasonable force under the

Fourth and Fourteenth Amendments and in violation of the Texas Wrongful Death Statute as

applied through 42 U.S.C. Section 1983 and 1988.

## FOURTEENTH AMENDMENT

65.     Plaintiffs adopt and reassert paragraphs 1 through 64 above as if fully set out herein.

66.     Defendants, acting under color of law and in concert with one another, unlawfully seized

Plaintiffs without reasonable suspicion that any violation or crime had been committed or was

likely to be committed, in violation of the Fourth Amendment guarantee against unreasonable

searches and seizures. The nature of the assault on the plaintiffs was objectively unreasonable.

Those actions, which violate the Plaintiffs' rights to substantive due process, give rise to plaintiffs'

claim pursuant to the Fourth Amendment applicable to the states by the Fourteenth Amendment

to the Constitution of the United States, and 42 U.S.C. § 1983.

67.     Defendants' acts were the direct and proximate cause of injury to the plaintiffs. They were

intentional and willful in violation of the plaintiffs' legal and constitutional rights, without good

faith, and with reckless disregard and callous indifference to plaintiffs' civil rights.

68.     The defendants, acting under color of law and in concert with one another, unlawfully

arrested, assaulted, and detained the plaintiffs without probable cause.

69.     The defendants violated Plaintiffs' constitutional rights. Those rights, to due process and to be free from excessive force and not to be detained without probable cause or reasonable suspicion, among others-were clearly established at the time of the shooting.

70.     Nothing Stanley Leger or Flora Leger did posed an immediate threat to the safety of the Defendants or others.  Plaintiffs did not resist arrest or attempt to evade arrest.  The Officers' conduct was objectively unreasonable, but was a result of their lack of training and in compliance with Defendant City's illegal de facto or improper policies, and its failure to reprimand.

71.     Plaintiffs did nothing which could have placed a reasonable officer in fear for his life or the life of anyone else. The force used was clearly excessive to the need, was objectively unreasonable and violated clearly established law.

72.     Having sustained a bullet wound to the chest and back and, ultimately, death, Plaintiff Stanley Leger suffered injuries as a direct and proximate result of the actions complained of herein.

73.     Having been assaulted and witnessed the assault of Stanley Leger, Flora Leger has suffered an injury.

74.     Having been falsely detained and denied the right to know whether her loved one was dead or alive, Flora Leger suffered injury.

75.     Defendants Singletary, Ames, Hayes and City failed to adequately train and reprimand Defendant Officers.

## V.

## ASSAULT

76.     Plaintiffs adopt and reassert paragraphs 1 through 75 above as if fully set out herein.

77.     By fatally shooting Plaintiff Leger and manhandling him after he was shot and unable to move, Defendants Beard, Cedars and Campbell committed assault against the Plaintiffs, proximately causing their injuries.

78.     As a result of the assault of Defendant Beard, Plaintiff Stanley Leger severe physical injury, in particular, Defendant Beard's bullet entered Mr. Leger's chest and struck his spine, ultimately, causing his death.

79.     Defendants Beard, Cedars and Campbell all pointed firearms, including the weapon which had just shot her husband, at Mrs. Leger, threatening her life and ordering her to leave her stricken husband. That threat was made without justification.

80.     By unnecessarily dragging and moving Plaintiff Stanley Leger several times after he had been shot in the chest and spine and was unable to move, Defendants Beard, Cedars and Campbell committed further assault against the Plaintiffs, directly and proximately causing injuries to Plaintiffs.

81.     Those actions, which violate the plaintiffs' rights to due process, also give rise to Plaintiffs' claim pursuant to the Fourth Amendment to the Constitution of the United States, and 42 U.S.C. § 1983.

## VI.

### BATTERY

82.     Plaintiffs adopt and reassert paragraphs 1 through 81 above as if fully set out herein.

83.     By shooting and killing Plaintiff Stanley Leger, Defendant Beard committed battery upon Plaintiff Stanley Leger.  Further, by unnecessarily moving Plaintiff Stanley Leger, after he was injured and immobilized, on three separate occasions, Defendants Beard, Cedars and Campbell caused additional injury to Mr. Leger and Defendants also committed another battery on Plaintiff Stanley Leger.

84.     As a result of the battery on Mr. Leger, Mr. Leger suffered severe pain and severe physical injury to his body from which Mr. Leger did not recover.

85.     Those actions, which violate the plaintiffs' rights, give rise to plaintiffs' claim pursuant to the Fourth Amendment applicable to the states by the Fourteenth Amendment to the Constitution of the United States, and 42 U.S.C. § 1983.

## VII.

### BYSTANDER INJURY

86.     Plaintiffs adopt and reassert paragraphs 1 through 85 above as if fully set out herein.

87.     Plaintiff Flora Leger was present inside the house when Mr. Stanley Leger, her husband, was shot.  She witnessed her husband in the immediate aftermath of being shot and his fall into the doorway of her home.  She has suffered severe emotional distress as a result.

88.     Those actions, which violate the plaintiffs' rights to substantive due process, give rise to plaintiffs' claims pursuant to the Fourth Amendment applicable to the states by the Fourteenth Amendment to the Constitution of the United States, and 42 U.S.C. § 1983.

## VIII.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

89.     Plaintiffs adopt and reassert paragraphs 1 through 88 above as if fully set out herein.

90.     After shooting Mr. Leger, Defendants pointed loaded weapons at Mrs. Leger.  Further, Mrs. Leger was forced to retreat into her own home at gunpoint and away from her injured husband.  Despite her requests, Mrs. Leger was not permitted to aid or comfort her husband nor was she permitted to accompany him to the hospital.  Further, Mrs. Leger was denied use of her telephones to contact family members.

91.     Mrs. Leger had done nothing illegal and had given the Defendants no reasonable suspicion to believe that he had. Nevertheless, she was detained and required to provide a statement as her husband fought for his life.

92.     Those actions, which violate the plaintiffs' rights to due process and equal protection, give rise to plaintiffs' claim pursuant to the Fourth Amendment applicable to the states by the Fourteenth Amendment to the Constitution of the United States, and 42 U.S.C. § 1983.

## IX.

93.     All claims set forth herein are asserted as to all Defendants, jointly and severally, who aided and abetted one another and acted in concert unless specifically stated otherwise.

## X.

### SURVIVAL CAUSE OF ACTION

94.     The allegations contained in the paragraphs 1 through 93 are incorporated herein by reference.

95.     Plaintiff, FLORA LEGER, AS THE REPRESENTATIVE OF THE ESTATE OF STANLEY LEGER brings all causes of action under the Texas Survival Statute, § 71.021 of the Texas Civil Practices and Remedies Code and as applied through 42 U.S.C. § 1983 and § 1988 for the damages sustained by Stanley Leger prior to his death, including but not limited to physical pain, disfigurement, emotional distress, and mental anguish. Additionally, Plaintiff, FLORA LEGER ON BEHALF OF THE ESTATE OF STANLEY LEGER makes a claim for the funeral expenses incurred by reason of the death of Victor Fuentes.

## XI.

### WRONGFUL DEATH

96.     The allegations contained in the paragraphs 1 through 95 are incorporated herein by reference.

97.     Plaintiff, FLORA LEGER, Individually, JIM LEGER and MARK LEGER all bring causes of action for the wrongful death of STANLEY LEGER under the Texas Wrongful Death Statute, § 71.001 et seq. of the Texas Civil Practices and Remedies Code and as applied through 42 U.S.C. § 1983 and § 1988 against all Defendants for causing the wrongful death of Stanley Leger through the deprivation of his constitutional rights, and all other causes described herein. Plaintiffs are statutory beneficiaries under the Texas Wrongful Death Statute.

## XII.

## DAMAGES

98.     The allegations contained in the paragraphs 1 through 97 are incorporated herein by reference.

99.     In addition to the damages mentioned in the preceding paragraphs as a direct and proximate result of the intentional and unlawful conduct of Defendants, Plaintiffs have suffered, and in reasonable probability will continue to suffer damages, as described herein.

100.    As a direct and proximate result of Defendants' improper acts and omissions described herein, Mr. Stanley Leger suffered severe personal injury, disfigurement, pain and mental anguish from the time of the shooting and, ultimately, death.  The Estate of Stanley Leger likewise incurred funeral expenses. These claims survive to the Decedent Stanley Leger's Estate and such claims are hereby made.

101.    Plaintiff Flora Leger seeks damages for loss of consortium, the pecuniary loss resulting from the death of Stanley Leger, including, but not limited to, the care, maintenance, support, services, education advice, counsel, and reasonable contributions of a pecuniary value, excluding loss of inheritance, that the surviving spouse would have received from Stanley Leger, had he lived. The termination of her Husband-Wife Relationship with Mr. Leger, including loss of consortium, the positive benefits flowing from the love, support, companionship, and society that Plaintiff would in reasonable probability, have received from Stanley Leger, had he lived. Mental anguish suffered by the surviving spouse as a result of the death of Stanley Leger, including but not limited to the emotional pain, torment, and suffering that Plaintiff would, in reasonable probability, experience from the death of Stanley Leger and the loss of household services and the

loss of Inheritance: the earnings, if any, of the Decedent in which reasonable probability would have been added to his estate.

102.    Plaintiff Flora Leger, individually, as applied through 42 U.S.C. § 1983 and § 1988 for the actions described hereinabove seeks damages for the wrongful detention and seizure of her person and property, mental anguish, emotional distress.

103.    In addition, as a result of Defendants' actions as set forth herein, Plaintiffs seek all available damages under the Texas Wrongful Death Statute for causing the wrongful death of Stanley Leger through the deprivation of his constitutional rights, and all other causes described herein. Plaintiffs are statutory beneficiaries under the Texas Wrongful Death Statute.

104.    The conduct of the Defendants exhibited a callous disregard for the rights and welfare of Plaintiffs. This conduct justifies the imposition of punitive damages to act as a deterrent to prevent actions from occurring in the future. Plaintiffs seek recovery of punitive damages against Defendants.

## XIII.

## ATTORNEYS' FEES

105.    Plaintiffs are entitled to recover all attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## XIV.

## JURY TRIAL DEMANDED

106.    Plaintiffs demand trial by jury.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully pray and request that the Defendants be cited to appear and answer herein and upon a final hearing of the cause, judgment be entered for the Plaintiffs for the all relief requested, economic and actual damages requested herein, together with prejudgment and post judgment interest at the maximum rate allowed by law, attorney's fees, court costs, and exemplary and/or punitive damages and such other and for all such other and further relief, general and special, at law or in equity, to which Plaintiffs are justly entitled, whether pled or unpled.

**RESPECTFULLY SUBMITTED, this the 5th day of October, 2016.**

　　　　　　　　　　　　　　　　　 _/s/ Robert G. Taylor, III_____
　　　　　　　　　　　　　　　　　**ROBERT G. TAYLOR, III**

**Robert G. Taylor, III (Trey)**
**Texas Bar Number 19721100**
**R. G. Taylor, II, P.C. & Associates**
**4119 Montrose, Suite 550**
**Houston, Texas 77006**
**Telephone (713) 654-7799**
**Facsimile  (713) 654-7814**
**ttaylor@rgtaylorlaw.com**

*and*

　　　　　　　　　　　　　　　　　 _/s/ Joshua L. Potter_____
　　　　　　　　　　　　　　　　　**JOSHUA L. POTTER**

**Joshua L. Potter**
**Texas Bar Number 24081103**
**THE POTTER LAW FIRM**
**117 East Broad Street**
**Texarkana, Arkansas 71854**
**Telephone: (870) 774-2569**
**Facsimile:   (870) 773-2104**
**joshua@thepotterfirm.com**
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2016, a true and correct copy of the foregoing was served via the ECF system, email, facsimile and/or US mail on the following counsel of record:

**Mr. Frank D. Calvert**
**Mr. F. Blair Clarke**
**Calvert Eaves Clarke & Stelly, LLP**
**Beaumont Tower**
**2615 Calder Avenue, Suite 1070**
**Beaumont, Texas 77702**
**fcalvert@calvert-eaves.com**
**fbclarke@calvert-eaves.com**
**Facsimile (409) 832-8886**


**Mr. Tyrone E. Cooper**
**Mr. Quentin D. Price**
**Ms. Sharae N. Reed**
**City Attorney's Office**
**City of Beaumont, Texas**
**P. O. Box 3827**
**Beaumont, Texas 77704**
**sreed@beaumonttexas.gov**
**Facsimile (409) 880-3121**


     **/S/ Robert G. Taylor, III**           

     **Robert G. Taylor, III**